UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HECTOR PUJOLS-GUERRERO,<br><br>Defendant. | Criminal Action No. 20-cr-10214-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Currently before the Court is Defendant Hector Pujols-Guerrero's ("Pujols-Guerrero") motion to dismiss the indictment pending against him based a violation of his Sixth Amendment right to a speedy trial. [ECF No. 84]. For the following reasons, Pujols-Guerrero's motion is DENIED.

I.  BACKGROUND

This case is the result of an international money laundering investigation conducted by the DEA, which began in 2013. [ECF No. 89 at 1]. During its investigation, the DEA conducted money pickups utilizing an undercover agent. [Id.]. Two of these money pickups involved Pujols-Guerrero and took place at or near his residence in Everett, Massachusetts: one on August 11, 2016 and the other on August 26, 2016. [Id.].

Thereafter, on September 19, 2016, agents surveilling Pujols-Guerrero's residence observed Elias Suarez-Guerrero ("Suarez-Guerrero"), Pujols-Guerrero's half-brother and co-defendant, leaving the home. [Id. at 2]. Investigators stopped Suarez-Guerrero and arrested him for driving without a license. [Id.]. While performing a search of Suarez-Guerrero's vehicle, the

1

investigators found two bricks of pressed powder and a small baggie, containing 999.22 grams of fentanyl, 711.84 grams of heroin, and 14.20 grams of heroin.  [Id.].  Suarez-Guerrero was charged in state court with trafficking Class A substances and for the motor vehicle violation.  [Id.].

Following Suarez-Guerrero's arrest, Pujols-Guerrero was confronted by federal agents at his Everett residence.  [ECF No. 89 at 2].  Pujols-Guerrero presented officers with a Puerto Rican driver's license bearing the name Luis Armando Rodrigues-Luna, although Spanish-speaking investigators thought it could have been a fake name/identification, because Pujols-Guerrero spoke with a Dominican accent.  [Id. at 2–3].  Pujols-Guerrero consented to a search of his residence.  [Id. at 2].  During the search, federal agents found scales and approximately $82,000, [id.], but did not then arrest Pujols-Guerrero, [ECF No. 93 at 4].

Subsequently, between 2016 and 2020, agents investigated Pujols-Guerrero's identity and ultimately determined that he was living in the Dominican Republic.  [ECF No. 89 at 3–4].  On August 17, 2020, the U.S. Attorney's Office for the District of Massachusetts (the "USAO") contacted the Office of International Affairs ("OIA") to discuss the logistics of the extraditing Pujols-Guerrero from the Dominican Republic.[1]  [ECF 89-1 at 6].

On September 29, 2020, the grand jury returned a five-count indictment against Pujols-Guerrero and Suarez-Guerrero, charging them with conspiracy to distribute and to possess with intent to distribute four-hundred grams or more of fentanyl and one-hundred grams or more of heroin, two counts of money laundering, and unlawful reentry into the United States following deportation.  [ECF No. 1].  The indictment was sealed.  Arrest warrants for both Pujols-Guerrero

---

[1] There is an extradition treaty between the Dominican Republic and the United States.  [ECF No. 89-1 ¶ 5 (citing Treaty)].

and Suarez-Guerrero issued the same day, [ECF No. 85 at 1], and by October 2, 2020, both warrants were entered in the National Crime Information Center database, [ECF No. 89 at 3].

On January 8, 2021, the USAO provided OIA with a draft extradition package for Pujols-Guerrero that included uncertified copies of the indictment and the arrest warrant. [ECF No. 89-1 ¶ 16]. That same day, OIA informed the USAO that they also required copies of Pujols-Guerrero's fingerprints and certified copies of the indictment and arrest warrant before they would review the application. [Id.]. The USAO provided these documents to OIA on April 7, 2021. [ECF No. 89-1 ¶ 17]. On July 6, 2021, OIA reached out to the USAO with questions and revisions to of the extradition package. [Id.]. That same day, the USAO answered the questions and submitted an updated draft. [Id.]. OIA completed its review and returned the revised extradition package to the USAO on July 8, 2021, to be sworn and executed. [ECF No. 89 at 5]. The completed package was returned to OIA on or about July 15, 2021. [ECF No. 89-1 ¶ 19].

From July 15, 2021 to October 28, 2021, the extradition package was translated into Spanish, reviewed by OIA, and certified by the Department of Justice. [ECF No. 89-1 ¶ 20]. OIA sent the approved extradition package to the Department of State ("DOS") on about October 28, 2021. [Id.]. On March 2, 2022, after finalizing its review and certifying the request, DOS sent the package to the U.S. Embassy in Santo Domingo to present to the Dominican Republic's government. [ECF No. 89 at 5]. The package was presented to MIREX, the Dominican Republic's equivalent of DOS, on March 22, 2022. [ECF No. 89-1 ¶¶ 11, 21].

From March 22, 2022 to early May of 2022, the Dominican Republic's Supreme Court reviewed the extradition request and issued an arrest warrant, and law enforcement located Pujols-Guerrero. [ECF No. 89 at 5–6; ECF No. 89-1 ¶ 11]. Between May 3, 2022 and May 5,

2022,[2] Pujols-Guerrero was arrested in the Dominican Republic. [ECF No. 83 at 6; ECF No. 85 at 2; ECF No. 86]. He says that he had no knowledge of the indictment before this, and that he viewed the indictment for the first time after his arrest. [ECF No. 86 ¶ 2]. In the nearly six months between his arrest and extradition, Pujols-Guerrero remained in custody in the Dominican Republic. [ECF No. 89 at 6]. Once it determined that the extradition request was legally permissible, the Dominican Republic Supreme Court sent its decision to the President of the Dominican Republic, who authorized the extradition in a written presidential decree dated October 10, 2022. [ECF No. 89-1 ¶¶ 4, 12–23]. Pujols-Guerrero was then extradited to the United States on October 27, 2022, [id. ¶ 24], and first appeared in court on October 28, 2022, [ECF No. 55].

Prior to Pujols-Guerrero's extradition, Suarez-Guerrero was located, arrested, and pled guilty to counts one and four of the indictment, for conspiracy to distribute and to possess with intent to distribute 400 grams or more of fentanyl and 100 grams or more of heroin. [ECF Nos. 47, 50]. He was sentenced on September 26, 2022. [ECF No. 50].

On August 10, 2023, Pujols-Guerrero filed the instant motion to dismiss, claiming that his Sixth Amendment right to a speedy trial has been violated. [ECF No. 84]. The Government opposed the motion on August 29, 2023. [ECF No. 89].

## II. LEGAL STANDARD

As another session of this court recently explained:

> The Sixth Amendment protects a defendant's right to a prompt resolution of criminal charges against him by providing [that] "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ." U.S. Const. amend VI. The right to a speedy trial "is one of the most basic rights preserved by our

---

[2] The government states that the Defendant was arrested on May 3, 2022, [ECF No. 89 at 6], while Pujols-Guerrero states in various pleadings that he was arrested on May 4, 2022, [ECF No. 86 ¶ 2], and "on or about May 5, 2022," [ECF No. 85 at 2].

> Constitution." Klopfer v. North Carolina, 386 U.S. 213, 226 (1967). This fundamental constitutional protection recognizes "the general concern that all accused persons be treated according to decent and fair procedures." Barker v. Wingo, 407 U.S. 514, 519 (1972).
>
> As the Supreme Court has explained, the Sixth Amendment speedy trial right is "generically different from any of the other rights enshrined in the Constitution for the protection of the accused." Id. The Sixth Amendment implicitly recognizes that pretrial delays "might result in witness unavailability and fading memories, which may prejudice both defendants and prosecutors." United States v. Handa, 892 F.3d 95, 101 (1st Cir. 2018) (citing Barker, 407 U.S. at 521). But the constitutional right to a speedy trial must also be read to "promote the interests of rehabilitation, minimize the amount of time potentially dangerous individuals are free on bond, prevent oppressive pretrial incarceration, minimize anxiety and concern of the accused, and shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." Id. (internal quotations omitted) (citing Barker, 407 U.S. at 519-32 and United States v. Loud Hawk, 474 U.S. 302, 311 (1986)).

United States v. El Naddaf, No. 13-cr-10289, 2023 WL 2541555, at *15–16 (D. Mass. Mar. 16, 2023).

To trigger a Sixth Amendment speedy trial analysis, "the accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." Doggett v. United States, 505 U.S. 647, 651–52 (1992) (internal citations omitted). "A delay between accusation and trial is 'presumptively prejudicial' at least as it approaches one year." Id. at 652 n.1 (1992). If the delay is deemed presumptively prejudicial, courts apply a four-part balancing test, evaluating: "[1] whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result," (the so-called "Barker" factors). Id. at 651 (citing Barker, 407 U.S. at 530 (1972)). "No single factor is dispositive, but rather courts must weigh the factors 'on a case-by-case basis "together with such other circumstances as may be relevant."'" United States v. Reyes, 24 F.4th 1, 28 (1st Cir. 2022) (first citing Barker, 407

5

U.S. at 533; and then quoting <u>United States v. Mala</u>, 7 F.3d 1058, 1061 (1st Cir. 1993) (quoting <u>Barker</u>, 407 U.S. at 533)).

III.     **DISCUSSION**

   A.     **Length of Pretrial Delay**

The length of pretrial delay is a "double enquiry," acting as "both a triggering mechanism for the speedy trial analysis and a factor in that analysis."  <u>Doggett</u>, 505 U.S. at 651; <u>United States v. Carpenter</u>, 781 F.3d 599, 609 (1st Cir. 2015).  If the delay reaches the threshold to trigger the analysis, which the government concedes it has here, [ECF No. 89 at 7], "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."  <u>Doggett</u>, 505 U.S. at 652.

In calculating the length of delay, the parties agree that the right to speedy trial attached upon Pujols-Guerrero's indictment on September 29, 2020.  [ECF No. 85 at 3–4; ECF No. 89 at 6].  The parties disagree, however, about when the speedy trial clock "stops" ticking.  The government argues that "clock stopped ticking, for constitutional purposes, when the United States formally delivered the extradition package to the Dominican authorities on March 22, 2022," eighteen-months after the indictment was filed.  [ECF No. 89 at 6].  Pujols-Guerrero maintains that "the speedy trial clock stops at the time of trial or when a motion to dismiss is granted," [ECF No. 93 at 2–3], but limits his challenge in the present motion to the twenty-five-month delay between the indictment and his first appearance in October 2022, [ECF No. 85 at 4].  Further, Pujols-Guerrero asserts that by seeking to exclude the time period after delivery of

6

extradition package, the government conflates the first prong of the analysis, "duration of the delay," with the second prong, the "cause of that delay."  [ECF No. 90-1 at 2–3].

Neither party directs the Court to First Circuit caselaw specifically addressing this issue, although the First Circuit has held, outside of the extradition context, that "the period of delay under the first Barker factor include[s] the entire period from initial indictment to trial." United States v. Irizarry-Colón, 848 F.3d 61, 69 (1st Cir. 2017).  The Court finds, under either party's formulation, that the length of delay, either eighteen or twenty-five months, provides some support for finding a constitutional violation.  See United States v. Lara, 970 F.3d 68, 82 (1st Cir. 2020) (finding that "a delay of about eighteen months [is] . . . 'not at the extreme end of the spectrum' but . . . might nevertheless weigh somewhat in the defendant's favor in the overall calculus." (quoting United States v. Souza, 749 F.3d 74, 82 (1st Cir. 2014)); see also United States v. Colombo, 852 F.2d 19, 24 (1st Cir. 1988) ("A delay of two years for a case of this complexity, where the government was aware of most of the facts beforehand, is excessive. Unfortunately for the appellees, however, their case founders on the next three prongs of the analysis."); United States v. Benjamin-Hernandez, No. 15-cr-00713, 2018 WL 11305822, at *3 (D.P.R. Aug. 28, 2018) (determining that thirty-three month delay, in a "complex multi-defendant drug-trafficking conspiracy . . . weigh[ed] in favor of Defendants' Sixth Amendment claim," but ultimately finding Sixth Amendment right to a speedy trial had not been violated), aff'd, 49 F.4th 580 (1st Cir. 2022).

**B.   Reason for the Delay**

The next factor, "the reasons for the delay, has been called, 'the focal inquiry.'" United States v. Muñoz-Amado, 182 F.3d 57, 62 (1st Cir. 1999) (quoting United States v. Santiago–Becerril, 130 F.3d 11, 22 (1st Cir. 1997)).  In determining whether blame is attributable to the

7

government, courts utilize a "sliding scale," in which "deliberately dilatory tactics . . . [are] weighed more heavily against the state than periods of delay resulting from negligence." Rashad v. Walsh, 300 F.3d 27, 30 (1st Cir. 2002).[3] Justifiable delays and delays caused by the defendant are not counted against the government. Id. The burden is on the government to justify pre-trial delay, as it "has an affirmative constitutional obligation to try the defendant in a timely manner." United States v. Fernandes, 618 F. Supp. 2d 62, 68 (D.D.C. 2009) (internal quotations omitted) (quoting Redd v. Sowders, 809 F.2d 1266, 1269 (6th Cir. 1987) (citing United States v. Graham, 128 F.3d 372, 374 (6th Cir. 1997))).

As discussed above, the government contends that the "seven-month period between the delivery of the extradition application to Dominican Republic authorities on March 22, 2022, . . . and [Pujols-Guerrero's] ultimate return to the United States in October 2022, [should not be] counted against the government for constitutional speedy trial purposes." [ECF No. 89 at 6–7]. Courts have held that once an extradition package is delivered to foreign authorities, delays caused by the extraditing country are not attributable to the government. United States v. Reumayr, 530 F. Supp. 2d 1200, 1206 (D.N.M. 2007) ("[F]oreign countries extraditing defendants to this country are entitled to follow the extradition procedures established by their laws, and the United States is not responsible in a Sixth Amendment sense when those laws and procedures create delays, however long."); see United States v. Palmer, No. 14-cr-00652, 2021 WL 3932027, at *8 (S.D.N.Y. Sept. 1, 2021) (finding, as the defendant had conceded, that "fourteen-month period between the delivery of [an] extradition application to Dominican Republic authorities and [Defendant's] arrest [wa]s not attributable to unreasonable Government

---

[3] Pujols-Guerrero does not argue that the government deliberately delayed his extradition. [ECF Nos. 85, 93].

delay"). The Court agrees that the delay from the time the Dominican Republic received the extradition package until Pujols-Guerrero's was extradited to the United States, are the reasonable result of the extradition process, and thus not attributable to the government.

The Court next turns to the time between Pujols-Guerrero's indictment on September 29, 2020, and the Dominican Republic's receipt of the extradition package on March 22, 2022. Although the preparation of the extradition process could have moved more quickly, "[o]ur speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable." Doggett, 505 U.S. at 656. Throughout the process of preparing the extradition package, multiple agencies, including the USAO, OIA, DOS, and the U.S. Embassy in Santo Domingo, coordinated to compile, review, revise, translate, and execute the extradition package. [ECF No. 89-1 ¶¶ 14–21]. As counsel noted during the hearing on the motion, much of this process occurred against the backdrop of a global pandemic. Such delays were a justifiable product of the pandemic and the multi-step, multi-agency extradition process. Furthermore, the USAO contacted OIA to discuss the logistics of Pujols-Guerrero's extradition from the Dominican Republic in August 2020, even before filing the indictment, manifesting a good faith effort to initiate the process with expediency. [Id.]. Thus, the Court finds that the government proceeded with diligence, and this factor therefore weighs heavily against a finding that Pujols-Guerrero's speedy trial right has been violated.[4]

---

[4] Courts may also consider the defendant's role in creating the delay, as delays caused by a defendant are not attributable to the government. Rashad, 300 F.3d at 30. The government asserts that Pujols-Guerrero contributed to the delay by moving to the Dominican Republic and living under an alias. [ECF No. 89 at 9–11]. Because it is not clear that Pujols-Guerrero knew about the indictment when he moved to the Dominican Republic, the Court does not rely on this in its analysis. Clearly, if he moved to another country and assumed an alias to avoid arrest and prosecution, this would weigh against finding his constitutional right to have been violated.

### C. Assertion

"The third prong is the assertion of the speedy trial right, in particular the 'frequency and force' with which the defendant objected to delay." Carpenter, 781 F.3d at 614 (quoting Barker, 407 U.S. at 529). Assertion of the right can provide "strong evidentiary weight" in establishing deprivation of the right, Barker, 407 U.S. at 531–32, while failure to assert the right "until it 'bec[omes] a possible means by which to obtain dismissal of the charges'" can weigh against the defendant, United States v. Henson, 945 F.2d 430, 439 (1st Cir. 1991). The instant motion to dismiss, filed nearly three years after the indictment, seventeen months after his arrest, and nine months after his first appearance, is the first time that the Defendant has asserted his speedy trial right. [ECF Nos. 55, 84; ECF No. 89 at 6, 11–13]. Since his first appearance, Pujols-Guerrero has also agreed to exclude all time under the Speedy Trial Act. [ECF No. 89 at 11 (citing ECF Nos. 56, 60, 63, 66, 69, 78)]. He maintains that he did not know of his indictment prior to his arrest, e.g., [ECF No. 93 at 2], though the government disputes this, [ECF No. 89 at 11–13].[5] Further, at the hearing on the motion, defense counsel explained that it had been difficult to find a translator to communicate with Pujols-Guerrero since his arrest, which contributed to the delay in his assertion of his right to a speedy trial. While such a delayed assertion could weigh against a defendant, recognizing that access to an interpreter may have contributed to the delay, the Court finds that this prong is neutral in that it neither weighs for nor against Pujols-Guerrero.

### D. Prejudice

Finally, "[t]he prejudice prong seeks to protect three interests: avoidance of oppressive pretrial incarceration, minimizing anxiety and concern, and limiting the possibility that the

---

[5] The government argues that Pujols-Guerrero was likely aware that charges were filed against him or pending. [ECF No. 89 at 11–13].

defense will be impaired.  Carpenter, 781 F.3d at 614 (1st Cir. 2015) (quoting Doggett, 505 U.S. at 654).  If the court finds that the government pursued prosecution with reasonable diligence, as it has here, a defendant must provide affirmative proof of specific prejudice to prove his speedy trial claim.  Doggett, 505 U.S. at 656; see United States v. Handa, 266 F. Supp. 3d 443, 448 (D. Mass. 2017).  In line with the interests at issue when assessing prejudice, affirmative proof of prejudice requires evidence of "[1] oppressive pretrial incarceration, [2] anxiety and concern of the accused, and [3] the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence."  Doggett, 505 U.S. at 654 (quotations omitted).

Pujols-Guerrero does not claim to be prejudiced due to incarceration or anxiety, see generally [ECF Nos. 85, 89], but rather argues that his defense was impaired as a result of the government's delay because Suarez-Guerrero could now be compelled to testify against him, [ECF No. 85 at 7].  "The Sixth Amendment Speedy Trial Clause protects the accused against a number of harms associated with a delay between accusation and trial, [including] . . . the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence."  Handa, 892 F.3d at 105 (quoting Doggett, 505 U.S. at 654).  It is not meant to restrict the government's ability to develop new witnesses during a justifiable pretrial delay.  Doggett, 505 U.S. at 655; United States v. Vassell, 970 F.2d 1162, 1165 (2nd Cir. 1992).  In fact, in Doggett, the Court held that the government's need to collect witnesses may act as a justification *for* delay.  505 U.S. at 656 ("Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable.  The government may need time to [among other things] collect witnesses against the accused . . . ."); Vassell, 970 F.2d at 1165 (holding that "a seven-month delay in a complex case is not transformed into a Sixth Amendment violation just because the government sought the delay to encourage a co-defendant to testify against a

remaining defendant at trial," and stating that "[o]ne of the government's most effective ways to 'collect' witnesses against an accused is to offer an accomplice a guilty plea to a lesser charge, in exchange for his testimony against the accused." (citing Doggett, 505 U.S. at 656)).[6] The Court finds that the pretrial delay here did not become constitutionally impermissible by virtue of the fact that the co-defendant pled guilty and was sentenced while the government was awaiting Pujols-Guerrero's extradition.

Balancing each of the above factors, the Court finds that even had the Court found the relevant delay to be the twenty-five months between the indictment and Pujols-Guerrero's first appearance in October 2022 (which it does not), that delay does not rise to the level of a constitutional violation. Although the length of an eighteen or even twenty-five months delay may "tip the scales slightly in favor of [Pujols-Guerrero's] claim," Muñoz-Amado, 182 F.3d at 62, the facts that the government acted with reasonable diligence over that time and that Pujols-

---

[6] United States v. Maldonado-Peña, 4 F.4th 1, 19 (1st Cir. 2021), cited by Pujols-Guerrero, [ECF No. 85 at 7], does not counsel otherwise. There, the First Circuit evaluated whether the nearly five years that elapsed between indictment and trial, in the context of a so-called "mega-case" with fifty-five co-defendants, constituted a constitutionally impermissible delay. The Court noted that it had "genuine concerns about the impact of the government's decision to charge and monolithically process 'mega-cases' on defendants' rights to a speedy trial." Id. at 19. It also clarified that in a previous case the court had not "give[n] [its] blessing . . . to multidefendant indictments regardless of the consequences, nor did [it] bless years of delay caused by allowing the time for codefendants' change of pleas to make it easier for the government to use codefendant testimony." Id. (citing United States v. Casas, 425 F.3d 23 (1st Cir. 2005)). Nevertheless, the Court affirmed the trial court's holding that there was no constitutional violation. Id. at 17. As such, these statements are dicta, in a case with very different facts (a many-years-longer delay and fifty-three more co-defendants). Id. at 13. Likewise, in noting that it was not approving "years of delay caused by allowing the time for codefendants' change of pleas to make it easier for the government to use codefendant testimony," the First Circuit appears to have been more focused on the fact that this was not a justifiable cause for the years-long delay than on the prejudice that could come from the codefendants' testimony itself. Id. at 19. Here, there is no suggestion that the government sought to cause the delay to compel Suerrez-Guerrero's testimony. For all of these reasons, Maldonado-Pena does not alter the Court's conclusion that Pujols-Guerrero has failed to present evidence of specific prejudice.

Guerrero has not identified specific prejudice suffered weigh heavily against Pujols-Guerrero. Further, as explained above, under the circumstances here, Pujols-Guerrero's relative delay in asserting his speedy trial right is neutral. The Court thus concludes, considering the totality of the circumstances, that Pujols-Guerrero has not been deprived of his right to a speedy trial.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, [ECF No. 84], is <u>DENIED</u>.

**SO ORDERED.**

December 13, 2023                                          <u>/s/ Allison D. Burroughs</u>
                                                                          ALLISON D. BURROUGHS
                                                                          U.S. DISTRICT JUDGE